**Celesta Sue GROVER, Appellant,**

v.

**SUPERIOR WELDING, INC., Appellee,**

**and**

**Cleerman Machine Tools Inc., Defendant.**

No. 79360.

Supreme Court of Oklahoma.

Feb. 21, 1995.

Thomas J. McGeady and Tommy R. Dyer, Jr., Logan & Lowery, Vinita, for appellant.

Eugene Robinson and Ronald E. Hignight, McGivern, Scott, Gilliard Curthoys & Robinson, Tulsa, for appellee Superior Welding.

HARGRAVE, Justice.

Certiorari to Court of Appeals, Oklahoma City, Division I, to review a published opinion of the Court of Appeals. The issue presented in the present case is whether a defendant is liable in tort for injuries sustained by a worker, employed by a subsidiary of defendant, when the injury was sustained by using an inherently dangerous drill press.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

Appellee, Superior Welding, Inc., had an extra drill press. Superior Welding's wholly-owned subsidiary, Superior Casting, Inc., was in need of a drill press, so Superior Welding gave the machine to Superior Casting. Celesta Sue Grover, an employee of Superior Casting, was seriously injured while

using the drill press. The injury occurred when she bent down to pick up a fallen workpiece, placing her right hand on the drill press table for balance, Her glove was caught in the spinning drill bit. Ms. Grover's right arm was disunited four inches below her elbow.

Grover recovered workers' compensation benefits against Superior Casting, and then brought suit in the district court against Superior Welding, Inc., under theories of manufacturer's products liability and ordinary negligence. She abandoned the products liability claim, because it was apparent that Superior Welding was not the manufacturer, processor, assembler, distributor or commercial lessor of the drill press. Service was never obtained on the manufacturer, Cleereman Machine Tools, Inc. Ms. Grover persisted in the negligence claim on the grounds that Superior Welding was liable because it furnished an unsafe machine to her employer, for her use. Superior Welding moved for summary judgment on grounds that it owed no duty to Grover, and that the transfer of the drill press was not the proximate cause of Grovers's injury. Additionally, Grover had been trained on the drill press, and had on a number of occasions been warned about bringing her gloved hand close to the drill, but on at least two occasions had caught he gloved hand in the drill while improperly brushing away metal chips. The drill press had no shield, guards, or warnings, and was not equipped with a foot pedal or "dead-man" switch. The trial court, in granting summary judgment to Superior Welding, concluded that Superior Welding owed no duty to Grover, because the danger of the drill press was not latent or caused by some defect in the machine, but was inherent in the nature of the machine.

The Court of Appeals reversed, finding summary judgment inappropriate both on the question of duty and causation. On the duty issue, the court placed primary reliance on *Magnolia Petroleum Co., v. Angelly,* 306 P.2d 309 (Okl.1955), which supports generally the proposition that one who supplies machinery for the use of others assumes a duty to furnish proper and safe machinery. The

Court of Appeals reasoned that the Superior Welding's duty would not be limited to warning of latent defects, but would be under the additional duty to furnish a safe drill press. The Court also determined that the question of Grover's comparative negligence would present a jury question in any event, pursuant to *Art. 23, § 6* of the Oklahoma Constitution. The published opinion of the Court of Appeals concludes with the observation that in order to resist the motion of summary judgment, the plaintiff would need to advance no evidence tending to show a causal connection between her injury and any act by Superior Welding until first Superior Welding had come forward and conclusively demonstrated that Grover would have been injured in any event, even if the drill press had been equipped with a guard, shield, foot pedal, or "dead-man", relying on *Spirgis v. Circle K Stores, Inc.,* 743 P.2d 682 (Okl.App. 1987) (approved for publication by the Supreme Court).

## THE TRIAL COURT PROPERLY GRANTED SUMMARY JUDGMENT AS SUPERIOR WELDING CANNOT BE HELD LIABLE FOR GROVER'S INJURIES AS THE NATURE OF THE DRILL PRESS WAS NOT DEFECTIVE BUT INHERENTLY DANGEROUS.

The threshold question in any suit based upon negligence is whether the defendant had a duty to the particular plaintiff alleged to be harmed. *Rose v. Sapulpa Rural Water Co.,* 631 P.2d 752, 756 (Okl.1981). The elements needed in proving actionable negligence has been addressed by this court. The elements are: (1) existence of a duty on defendant's part to protect plaintiff from injury; (2) violation of that duty; and (3) injury resulting therefrom. *Nicholson v. Tacker,* 512 P.2d 156, 158 (Okl.1973); *Wofford v. Eastern State Hospital,* 795 P.2d 516 (Okl. 1990); *Thompson v. Presbyterian Hospital,* 652 P.2d 260 (Okl.1980).

In the case at bar, the trial court concluded Superior Welding owed no duty to Grover because "the danger of the drill press was not latent nor caused by a defective machine but was inherent from the nature of the

machine."[1] The Court of Appeals reversed this finding relying on *Magnolia Petroleum Company v. Angelly*, 306 P.2d 309 (Okl.1955). In *Magnolia*, a supplier of aviation fuel provided an airport with a tank and pump assembly with a leaky hose. Angelly, an airport employee, was badly injured when he lit a match some distance from the fuel tank. This court held that the fuel supplier was dealing with "a most elusive and dangerous substance" and was under a duty to furnish a proper and safe appliance.

The court of appeals reliance upon *Magnolia* is misplaced. The court's reasoning that the supplier's duty would not be limited to warning of latent defects, but would also be under a duty to furnish a safe drill press is inappropriate. The machine in the present case had no latent defects. It was not like the defective hose in *Magnolia*, but rather, by its nature, a drill press is a dangerous piece of machinery. Grover was warned of the dangerous nature of the machine. Hence, she was aware of the dangerous, inherent, obvious, nature of the spinning drill press.

This issue has been addressed by the Fifth Circuit Court of Appeals in *Hagans v. Oliver Machinery Co.*, 576 F.2d 97 (5th Cir.1978). In *Hagans*, the plaintiff was injured when his hand came into contact with the blade of a circular saw. Hagans sued on strict liability and negligent theories and contended that the saw should have been equipped with permanent safety devices or with adequate warnings of the dangerous nature of the machine. After a jury verdict was returned to the plaintiff under his theories of strict liability and negligence, the Fifth Circuit reversed, finding no evidence in the record to support a duty to warn users of risks involved, especially where the potential danger was obvious, or actually known to the operator of the machine. The Court stated:

Implicit, therefore, in the duty to warn is the requirement that the user be ignorant of the dangers warned against. Thus, it is generally held that there is no duty to warn when the danger or potentiality of danger is obvious or is actually known to the injured person.

The Court further opined that "[o]ne can imagine no more obvious danger than that posed by the jagged edge of a circular saw spinning 3,600 revolutions per minute … Clearly, a warning of the dangers involved in using the saw would not have informed the Plaintiff of anything he did not already know." *Hagans* at 102.

Further, the Restatement (Second) of Torts § 388, entitled *Chattel known to be Dangerous for Intended Use*, addresses the issue before the bench. This section provides:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier:

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) Fails to exercise reasonable car to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Comment k relating to Clause B of the foregoing provisions provides:

k. *When Warning of Defects Unnecessary.*

One who supplies a chattel to others to use for any purposes is under a duty to exercise reasonable care to inform them of its dangerous character insofar as it is known to them, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. It is not necessary for the supplier to inform those for whose use the

---

1. This finding was based upon the Restatement (Second) of Torts § 388, entitled *Chattel known* *to be Dangerous for Intended Use.* This section is addressed at length in the body of this opinion.

chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made.

 Under the foregoing, it is apparent that a supplier of a chattel is not required to disclose the dangerous propensities of a chattel if the dangers are open and easily discernable. In accord with the above restatement section and in particular with comment k, the vast majority of courts have held that a manufacturer (supplier) of a product is not negligent when failing to warn against patent or open and obvious dangers involved with the use of their products.[2] We agree with these holdings as they affect the matter before this court.

Additionally, in *Mayberry v. Akron Rubber Machinery Corp.,* 483 F.Supp. 407, 413 (N.D.Okla.1979), the court addressing the duty to warn stated:

> A duty to warn exists only when those to whom the warning is to be communicated can reasonably be assumed to be ignorant of the dangers to which the warning attach. If it is unreasonable to assume they are ignorant of those facts, there is no duty to warn. *Burton v. L.O. Smith Foundry Products Co.,* [529 F.2d 108] at 111 [ (7th Cir.1976) ]. In other words, where the danger or potentiality of danger is known or should be known to the user, the duty (to warn) does not attach. *Berry v. Porche Audi, Inc.,* 578 P.2d 1195 (Okl.1978); *Davis v. Fox River Tractor Co.,* 518 F.2d 481 (10th Cir.1975); *Marshall v. Ford Motor Co.,* 446 F.2d 712 (10th Cir.1971) *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir.1968); *Lambertson v. Cincinnati Corp.,* [312 Minn. 114,] 257 N.W.2d 679 (Minn.1977); *Doran v. Pullman Standard*

*Car Mfg. Co.,* 45 Ill.App.3d 981, 4 Ill.Dec. 504, 360 N.E.2d 440 (Ill.1977); and *Dixon v. Outboard Marine Corp.,* 481 P.2d 151 (Okl.1971).

 In the present case Grover was aware of the dangerous nature of the drill press. She had been warned of its potential of harm. She had on at least two prior occasions caught her gloved hand in the drill while improperly brushing away metal chips. No duty was owed by Superior Welding to Grover thus, no duty has been violated. Therefore, the granting of summary judgment to Superior was proper. Having found that Superior Welding violated no duty to Ms. Grover, the issues pertaining to causation and Ms. Grover's comparative negligence, are moot.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT JUDGMENT AFFIRMED.**

HODGES, LAVENDER, SIMMS and WATT, JJ., concur.

ALMA WILSON, C.J., and KAUGER, V.C.J., and OPALA, J., dissent.

---

**2.** See *Schilling v. Blount,* 152 Wis.2d 608, 449 N.W.2d 56, 60–61 (App.1989) [bullet]; *Mele v. Turner,* 106 Wash.2d 73, 720 787, 789–91 (1986) [rotary lawn mower]; *Plante v. Hobart Corp.,* 771 F.2d 617, 620 (1st Cir.1985) [potato grinder]; *Kirsch v. Picker Int'l Inc.,* 753 F.2d 670, 671–72 (8th Cir.1985) [x-ray machine] *reh'g denied* 760 F.2d 183 (8th Cir.1985); *Kerr v. Koemm,* 557 F.Supp. 283, 286–288 (S.D.N.Y.1983) [tractor]; *Campos v. Firestone Tire & Rubber Co.,* 192 N.J.Super. 251, 469 A.2d 943 (1983) [wheel rim assembly]; *Maldonado v. Thomson Nat'l Press Co.,* 16 Mass.App. 911, 449 N.E.2d 1229, 1231 (1983) [press], *rev. denied* 389 Mass. 1105, 452 N.E.2d 1158 (1983); *Greenway v. Peabody Int'l Corp.,* 163 Ga.App. 698, 294 S.E.2d 541, 546–547 (1982) [dumpster]; *McPhail v. Municipality of Culebra,* 598 F.2d 603, 606–607 (1st Cir.1979) [municipal power lines]; *Cotroneo v. Sabatino,* 50 A.D.2d 1081, 377 N.Y.S.2d 317, 318–319 (1975) [snow blower] *aff'd* 41 N.Y.2d 848, 393 N.Y.S.2d 708, 362 N.E.2d 259 (1977).