2007 OK CIV APP 95

**Angela NIDER, Plaintiff/Appellant,**

**v.**

**REPUBLIC PARKING, INC., Defendant/Appellee.**

**No. 103,441.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 10, 2007.

Stacy S. Bateman, John A. Alberts, Abel, Musser, Sokolosky, Mares & Kouri, Oklahoma City, OK, for Plaintiff/Appellant.

Shawn E. Arnold, Law Offices of Ann Fries, Oklahoma City, OK, for Defendant/Appellee.

JOHN F. FISCHER, Judge.

¶ 1 Plaintiff Angela Nider appeals from the Trial Court's grant of summary judgment in favor of parking garage operator Defendant Republic Parking, Inc. in her premises liability action. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp.2004, ch. 15, app. 1. Based on our review of the record on appeal and applicable law, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On the morning of December 4, 2003, Nider fell as she was walking down the ramp of a downtown Oklahoma City parking garage operated by Defendant Republic Parking, Inc. At the time of her fall, Nider was on her way to work.

¶ 3 Nider filed this action against Republic seeking damages for injuries she sustained as a result of her fall. Nider alleged in her petition that she was an invitee on Republic's premises and had been proceeding slowly and carefully down the ramp before her fall. She further alleged that Republic was negligent in failing to keep and maintain the ramp in a safe and proper condition.[1] Republic denied that Nider was an invitee and asserted as affirmative defenses: (1) contributory negligence, (2) open and obvious condition, and (3) lack of proximate cause.

¶ 4 In its summary judgment motion, Republic argued that the condition of the ramp was open and obvious and that, because the garage had been built more than ten years earlier, Nider's action was barred by the limitation period set forth in 12 O.S.2001 § 109. The Trial Court granted Republic's motion for summary judgment without a hearing. Okla. Dist. Ct. R. 13(f), 12 O.S. Supp.2005, ch. 2, app. 1 ("A court may decide a motion for either a summary judgment or a summary disposition without a hearing, and where this is done, the court shall notify the parties of its ruling by mail."). Nider filed a combined "Motion for New Hearing" and "Motion to Reconsider" pursuant to 12 O.S.2001 §§ 653 and 990.2.[2] The Trial Court denied the motions on May 10, 2006. Nider timely appeals.

## STANDARD OF REVIEW

¶ 5 This Court reviews a trial court's denial of a motion for new trial for abuse of discretion. *Evers v. FSF Overlake Assocs.*, 2003 OK 53, ¶ 6, 77 P.3d 581, 584. Where the correctness of a trial court's exercise of discretion in denying a party's motion for new trial rests on the propriety of the grant of summary judgment, "the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness." *Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100, 106–07.

¶ 6 Review of a trial court's order granting summary judgment requires this Court to examine the pleadings and evidentiary materials submitted by the parties to determine whether one party is entitled to judgment as a matter of law because there are no disputed material factual questions. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On *de novo* review, this Court exercises its independent judgment as to the legal effect of the undisputed facts disclosed by the summary judgment record. *Id.* We have "an affirmative duty" to test the evidentiary material tendered to the Trial Court for its legal sufficiency to support the relief sought by the moving party. *Copeland v. The Lodge Enters., Inc.*, 2000 OK 36, ¶ 8, 4 P.3d 695, 699. If the moving party has not addressed all material facts, or if one or more of such facts is not supported by acceptable evidentiary material, summary judgment is not proper. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by the Oklahoma Supreme Court).[3]

---

1. In her deposition, Nider testified that the basis of her claim was the lack of protective coating and that the protective coating and hand rail did not extend all the way to the bottom of the ramp.

2. In the body of the document, Nider specifically identified her motion as one for new trial.

3. In its reply brief in the lower court, under the heading "Plaintiff's failure under Rule 13," Republic pointed out shortcomings in Nider's response brief and claimed that it was entitled to summary judgment due to her failure to provide "a concise statement of material facts as to

## DISCUSSION

¶ 7 In its motion for summary judgment, Republic asserted two grounds. First, Republic argued that it owed no duty to Nider because the injury-causing hazard was open and obvious. Absent a duty, Republic was entitled to prevail on Nider's negligence claim. Second, Republic argued that because Nider's theory of recovery was based on design defects in the construction of the ramp and handrail, it was barred by 12 O.S. 2001 § 109. In response, Nider argued that she was an invitee and that Republic had a duty to maintain the ramp and walkway in a safe and proper condition, which it breached causing her injuries. Because we find that Republic is not entitled to summary judgment, we first discuss the issue of Nider's status.

### I. Nider's Entry Status On the Property

¶ 8 "Entrants onto real property fall into three categories: trespasser, licensee and invitee." *Pickens v. Tulsa Metro. Ministry,* 1997 OK 152, ¶ 9, 951 P.2d 1079, 1083. Nider contends that she was an invitee, while Republic argues that she was a licensee. "The determination of entry status is critical in a premises liability case because the duty of care the property owner [or occupier] must exercise expands or contracts based on the entrant's status." *Id.* at ¶ 10, 951 P.2d at 1083.

¶ 9 In order to assign Nider licensee status, as urged by Republic, the record must show that Nider was on the premises for her own benefit, *for purposes in which Republic had no business, commercial or other interest.* *Foster v. Harding,* 1967 OK 46, ¶ 18, 426 P.2d 355, 360. The record does not support Republic's contention. Nider had entered into a month-to-month contract with Republic to use its parking garage, pursuant to which Republic required her to pay a $25 monthly fee. These undisputed facts require assigning invitee status to Nider. An invitee is one who possesses an invitation to be upon the premises, for the purpose of a common interest and mutual advantage. *Brown v. Nicholson,* 1997 OK 32, ¶ 7, 935 P.2d 319, 321. Republic thus owed Nider "a duty of 'reasonable care,'" and because she was "a business visitor [she was] entitled to that care which would make the premises safe for [her] reception." *Id.,* 935 P.2d at 322 (footnote omitted).

### II. Whether Republic Demonstrated Entitlement To Judgment As a Matter of Law

¶ 10 In Proposition I of its motion for summary judgment Republic argued that it did not have any duty to Nider regarding the condition that caused her injury. Republic correctly observed that it had neither a duty to keep its premises "accident-free" nor a duty to protect Nider from "open and obvious" dangers. Nonetheless, Nider's negligence claim requires us to examine the nature and extent of Republic's duty to her as an invitee.

### A. Republic's Duty of Care

¶ 11 The law applicable in this case is clear and well settled. As the owner of the garage, Republic had a duty of "reasonable care" to make the premises safe for Nider's reception. *Brown,* 1997 OK 32 at ¶ 7, 935 P.2d at 321 (citing *Rogers v. Hennessee,* 1979 OK 138, ¶ 3, 602 P.2d 1033, 1034, and *Jack Healey Linen Serv. Co. v. Travis,* 1967 OK 213, ¶ 5, 434 P.2d 924, 926). As to invitees like Nider, Republic was required "to use ordinary care to keep [the] premises in a reasonably safe condition." *See* Oklahoma Uniform Jury Instructions–Civil (OUJI–CIV) No. 11.10.[4] The Oklahoma Supreme Court has described the nature of that duty as follows:

> The cases denying liability of the [owner] all disclose the presence of a physical fact or circumstance not occasioned by, or within the possible control of the storekeeper

which a genuine issue exists." We note that: "Even when *no* counterstatement has been filed, it is still incumbent upon the trial court to insure that the motion is meritorious." *Spirgis,* 1987 OK CIV APP 45 at ¶ 10, 743 P.2d at 685.

4. The Oklahoma Uniform Jury Instructions should be used in the trial of a case unless the court determines that they do not accurately state the law. 12 O.S.2001 § 577.2.

or owner of the premises.... Those cases wherein liability has been held to attach recognize the presence of some physical fact or circumstance occasioned by an act or omission of the storekeeper which, although obvious and not dangerous within itself, forms an integral part of an eventuality out of which injury arose.

*J.J. Newberry Co. v. Lancaster*, 1964 OK 21, ¶ 22, 391 P.2d 224, 228 (affirming judgment on jury verdict entered for plaintiff injured when she tripped over stool in aisle in defendant's store and holding that, although not an insurer of plaintiff's safety, defendant owed plaintiff/invitee duty of maintaining portion of premises used by her in reasonably safe condition and duty to warn of any dangerous conditions arising in areas used, because plaintiff had the right to assume that it was safe to walk in those areas).

¶ 12 The photograph that Republic attached to its motion for summary judgment provided a reasonably detailed view of the ramp's condition and was relevant to Republic's common law duty of reasonable care.[5] The photograph showed a handrail along the side of the ramp adjacent to the wall of the garage. The handrail did not extend along the ramp's full length. Instead, the handrail ended at the building wall approximately three feet from the bottom of the ramp and the adjoining sidewalk. At the end of the handrail, the slope of the ramp increased significantly. On the portion of the parking garage ramp adjacent to the handrail, some strips of non-skid material had been intermittently placed. The strips were approximately two to three feet wide and extended from the handrail toward the center of the garage. The words "watch your step" appeared to have been painted on a large section of the non-skid material extending from the end of the handrail up the ramp into the garage. The words were somewhat faded and placed on the non-skid material so as to be read by a person walking up the ramp into the garage. A rectangular piece of the non-skid material was missing from the outside middle of this large section.

¶ 13 It appears from the discoloration of the ramp surface that, either during construction of the ramp or at some later point, a smaller strip of non-skid material, approximately the same width and one-half the length of the larger strip, had been installed between the larger section of non-skid material and the end of the ramp. So much of this strip was worn away, however, that less than one fourth of it remained attached to the ramp surface. Also, it appears from the discoloration of the ramp surface that another strip, of the same width and approximately one-half the length of the previous strip, had at one time been attached to the ramp surface. None of the non-skid material remained in this location. This area of discoloration was between the previous strip and the street-exit end of the ramp. It appears that at one time these three areas of non-skid material were placed approximately four to six inches apart.

¶ 14 Republic asserted that because Nider testified that nothing obstructed her view and that she could have seen the condition of the ramp had she looked, the hazardous condition of the ramp was open and obvious to a person using reasonable caution. Nider responded that she had not noticed the condition of the ramp and relied heavily on *Brown*, wherein the Oklahoma Supreme Court reversed summary judgment in favor of the parking garage owners.

¶ 15 The striking similarities between the facts of this case and *Brown* warrant a detailed discussion.[6] The plaintiff in *Brown* slipped and fell while walking down a steep parking garage ramp. She alleged that the owners of the ramp were negligent in their maintenance of the ramp. "Weather-stripping devices" had been placed on the ramp, but they were partially worn away. When the plaintiff fell, she was standing on " 'what

5.   One of Republic's undisputed facts was that the photograph depicted the conditions as they existed on the day of the accident.

6.   Unlike this case, the Court in *Brown* found the record insufficient to determine on summary judgment whether Brown was a licensee or invitee: "Neither Brown's status as an entrant on owners' property nor the nature of the hazard, if any she encountered on the ramp's incline, can be settled as a matter of law based on the record before us." *Brown*, 1997 OK 32 at ¶ 9, 935 P.2d at 322.

was remaining' of the weather strips." *Brown*, 1997 OK 32 at ¶ 4, 935 P.2d at 321. The Court concluded that this record precluded summary judgment because:

> [It cannot be determined with certainty] ·whether Brown's fall, while standing on the remnants of the strips, was caused by a hidden snare due to the strips' disintegrated form, or whether some other existing defect or danger contributed to her fall. This uncertainty makes summary judgment inappropriate. Whether the defect was open and obvious or whether, as Brown was approaching the locus in quo, the offending condition had a deceptively innocent appearance presents a question for the jury.

*Id.* at ¶ 12, 935 P.2d at 323.

¶ 16 Particularly relevant to this discussion is the Court's observation in *Brown* that the placement of the weather stripping might have resulted from precautions taken by the owner to make safe an "inherently dangerous" condition. Because of the slope of its ramp, particularly where it approached the sidewalk, Republic may have attempted to discharge its duty of reasonable care to make the garage safe for its invitees by installing the handrail and placing the non-skid material on the ramp surface. The degree of the slope of the ramp does not appear in the record. However, Nider testified that when she slipped on the ramp, the fall "put [her] out on the sidewalk."[7] The material facts offered in support of Republic's motion do not establish, as a matter of law, that such measures were reasonable and, therefore, that Republic discharged its original duty of reasonable care.

¶ 17 What is clear from this record is that, even if those initial measures were sufficient, Republic failed to maintain the non-skid material in the continuing discharge of that duty. Nider's petition alleges that Republic was negligent because it breached its duty to "maintain the ramp and walkway in a safe manner." Not only did Republic have the initial duty to take reasonable measures to make its garage safe for invitees, but also the continuing duty to maintain the garage in that condition. *Gorton v. Mashburn*, 1999 OK 100, ¶ 6, 995 P.2d 1114, 1116 (making a "statement of the obvious" that "[m]aintenance is not the same as nor synonymous with design and construction," but is "best characterized as after-care or upkeep."). *See also* OUJI–CIV No. 11.10 ("It is the duty of the [owner/occupant] to use ordinary care to keep [his/her/its] premises in a reasonably safe condition. . . .").

¶ 18 Republic's assistant manager stated in his affidavit that the ramp and handrail were constructed at the time the garage was built, more than ten years before Nider's accident, and that "no construction, alteration or improvement [had] been done either to the handrail or the ramp within ten years preceding [the accident]." Because the affidavit does not speak directly to the non-skid material, two interpretations are possible. The first is that the non-skid material was installed at the time the garage was built and not altered, improved or maintained in the intervening ten plus years. The second is that the affidavit provides no information regarding the non-skid material.

¶ 19 It is clear with either interpretation that, regardless of when placed, Republic allowed the non-skid material to deteriorate. Republic did not dispute the fact that the non-skid material was in a state of disrepair. The condition of the ramp supports Nider's claim of negligent maintenance. Whether that condition was the proximate cause of Nider's injury is a different matter, but Re-

---

7. Nider does not argue that the design of the ramp was defective because of the severity of the ramp slope. That argument would invoke the statute of repose asserted by Republic as a defense in Proposition II of its motion. A plaintiff may maintain an action for "premises liability" independent of a design defect claim where the injury results from an integral part of the structure. *Smedsrud v. Powell*, 2002 OK 87, 61 P.3d 891 (reversing summary judgment against a plaintiff who claimed to have been injured by a wooden awning because the trial court failed to recognize the plaintiff's negligence claim was not based on a defective design theory); *Abbott v. Wells*, 2000 OK 75, 11 P.3d 1247 (reversing summary judgment against a plaintiff who was injured when she·entered a bathroom that had a raised floor on the defendant's property, because the plaintiff's claim was based on common law negligence for failure to warn rather than a design defect).

public did not argue that issue in its summary judgment motion. Rather, Republic argued that, although hazardous, the condition of the ramp was known to Nider.

## B. Republic's Open and Obvious Defense

¶ 20 Republic sought to avoid liability in this case by claiming that the condition that caused Nider's injury did not result from any failure on its part but was an "open and obvious" condition as to which it owed Nider no legal duty. The focus of this argument was that Nider had used the garage and ramp for approximately eight months before her fall, the condition of the garage was known to Nider, and she made a personal choice to use the ramp rather than the stairs.

¶ 21 As Republic correctly observed, it had no duty to protect invitees from any dangerous condition that was open, obvious and readily observable under ordinary circumstances. See OUJI–CIV No. 11.12. However, Republic's reliance on Nider's previous experience with the garage does not resolve the matter. "A property owner may be liable for an injury to an invitee caused by a dangerous condition that the invitee was aware of, if the property owner had reason to know that the dangerous condition would cause harm to an invitee despite the invitee's knowledge." Id. This proposition is derived from Jack Healey, 1967 OK 213 at ¶ 9, 434 P.2d at 927, and the Restatement (Second) of Torts § 343A cmt. f (1965).

¶ 22 The Court in Jack Healey upheld a jury verdict for a plaintiff who slipped and fell in a soapy pool of water, despite the fact that the fall occurred at her place of employment where, as she was well aware, water regularly stood in pools at this location on the floor. On the day of the accident, however, the water covered such a large area that she could not walk around it and the lighting was such that she could not see the water until she stepped into it.[8]

Plaintiff's familiarity with the general physical condition which may be responsible for her injury does not of itself operate to transform the offending defect into an apparent and obvious hazard. Mere knowledge of the danger without full appreciation of the risk involved is not sufficient to bar plaintiff's right of recovery. Id. at ¶ 9, 434 P.2d at 927.

¶ 23 Similarly, the Restatement notes that a property owner may be liable for known and obvious dangers in circumstances where:

[T]he invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself .... [or] where the [owner] has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

Restatement (Second) Torts § 343A cmt. f (1965). Two observations from these materials are relevant to this case.

¶ 24 First, Republic could reasonably expect that invitees would enter and exit the garage by way of the ramp. Republic acknowledged that the ramp was one of only two means of ingress and egress it provided for its garage patrons. Furthermore, Nider was within the scope of Republic's invitation to invitees. She was not walking down the middle of the ramp, but, as Republic directed her, on the handrail side of the ramp where the non-skid material had been placed. Those precautions, however, did not absolve Republic of liability. "Where an invitee had been negligently misled into a reasonable belief that a passageway or door is an appropriate means of ingress or egress, he is entitled to the protection due his status while using such passageway or door." Jack Healey, 1967 OK 213 at ¶ 11, 434 P.2d at 928.

¶ 25 Second, any number of factors in this case, such as the proximity of the sidewalk and the garage's street entrance to the location of Nider's fall, invite the distraction from the hazard which is of concern in Jack Healey and the Restatement. See also Roper v. Mercy Health Ctr., 1995 OK 82, 903 P.2d 314

---

8. Republic has established from Nider's deposition testimony that lighting is not an issue in this case.

(where plaintiff tripped over a small light fixture installed in the sidewalk, finding her claim that she was distracted by nearby pedestrian traffic created an issue for determination by the jury); *Spirgis*, 1987 OK CIV APP 45 at ¶¶ 11–12, 743 P.2d at 685 (holding that whether property owner was liable for plaintiff's injury resulting from stepping into a pothole in the parking lot due to distraction by traffic was to be decided by the trier of fact).

¶ 26 Republic's undisputed facts Nos. 11 and 21 [9] establish that Nider did not notice the condition of the ramp prior to her fall. Republic's questioning of Nider during her deposition does not determine why this occurred. More importantly, that questioning does not preclude an inference that she was distracted from the ramp's condition by some reasonable cause. "Her familiarity with the condition of the ramp is not fatal to her recovery, and whether her foreknowledge should have prevented the harm is to be measured by a reasonable and objective standard." *Brown*, 1997 OK 32 at ¶ 11, 935 P.2d at 322. The fact that a particular condition is "observable" does not, in and of itself, require that the condition be declared an open and obvious danger as a matter of law. *Zagal v. Truckstops Corp. of Am.*, 1997 OK 75, ¶ 9, 948 P.2d 273, 275. "All of the circumstances must be considered to determine whether a particular condition is open and obvious to the plaintiff or not." *Id.* (citing *Brown*, 1997 OK 32 at ¶ 8, 935 P.2d at 322). Republic's own motion established that facts essential to its "open and obvious" defense either remained in dispute or entitled Nider to an inference that precluded summary

judgment. Consequently, Republic failed to establish as a matter of law that it owed Nider no duty regarding the condition of the ramp.

¶ 27 The dissent argues that at the heart of this case we must determine what was "hidden" about the condition of the ramp. On summary judgment, that question becomes relevant only after the property owner first establishes that it has discharged its initial duty to make and keep the premises safe for its invitees, or establishes that it had no duty regarding the condition that caused the injury. For the reasons previously discussed, we find, on the basis of this record, that Republic has done neither.

¶ 28 Nonetheless, while property owners have a duty to keep their premises in a "reasonably safe condition," they also have a duty to either "remove or warn the invitee of any hidden danger." OUJI–CIV No. 11.10 [10] Republic did not argue that the cause of Nider's injury was a hidden defect about which it provided adequate warnings.[11] Republic's argument was that Nider's injury did not result from any breach of either duty described in OUJI–CIV No. 11.10, because it had no duty to her regarding what it contended was an open and obvious hazard. While it was not Nider's burden on summary judgment to defeat each element of Republic's defense, she was entitled to prevail if she could show disputed facts regarding one element critical to Republic's defense. *Hadnot v. Shaw*, 1992 OK 21, n. 25, 826 P.2d 978, 985. Further, she was entitled to rely on the evidentiary materials submitted by Republic to do so. *See* Okla. Dist. Ct. R. 13(b).[12]

---

9. Republic's undisputed fact No. 11 provides: "Nothing prevented plaintiff from seeing the condition of the ramp or friction surface each day for eight months prior to the accident, she just didn't notice." Undisputed fact No. 21 provides: "When she came down the ramp each day for eight months, she didn't see the missing or deteriorating skid surface but just never noticed it."

10. "A hidden danger is a dangerous condition that the invitee [licensee] does not actually know about and would not be expected to observe in the exercise of ordinary care." OUJI–CIV No. 11.11.

11. In all of its submissions to the Trial Court, Republic neither referred to nor mentioned the

"watch your step" sign painted on its non-skid material. Republic's only discussion of this issue was in its response to Nider's motion for new trial, wherein Republic claimed that Nider did not provide any evidence of "a lack of sufficient warnings or even a deceptively dangerous condition."

12. As Republic noted, Nider's response did not comply with Rule 13. The consequence was that Republic's statement of undisputed facts was admitted. We are, nonetheless, required to search the record, including Republic's submissions, in conducting our *de novo* review. *Spirgis*, 1987 OK CIV APP 45 at ¶ 9, 743 P.2d at 684.

¶ 29 The condition of the ramp was apparent from the photograph submitted by Republic. And while the evidence regarding the manner in which Nider's fall occurred is sparse at best, what can be discerned from this record is that, when Nider was walking down the ramp along the path where the non-skid material had originally been placed, she slipped and fell, landing outside of the garage and on the sidewalk when the new shoes she was wearing "touched the cement." These facts permit more than one reasonable inference: (1) Nider fell because another piece of the non-skid material came loose under her foot; (2) she slipped on an area of the concrete where the non-skid material had worn away; or (3) she slipped on a part of the ramp where non-skid material had never been placed. The first inference describes a hidden defect, and the second and third describe observable conditions, which may or may not be "open and obvious" depending on the determination of the *Jack Healey* and Restatement issues previously discussed.

¶ 30 The evidence in this record is insufficient to substantiate or eliminate any of these possible inferences. Nonetheless, for purposes of summary judgment, Nider was entitled to the inference that defeated summary judgment.

### C. Assumption Of The Risk

¶ 31 Although Republic's motion for summary judgment purported to be confined to its "open and obvious" defense, it emphasized that Nider's use of the ramp was voluntary and that she had a safer alternative to walking down the ramp—it was her "personal choice" not to take the covered stairway. Republic argued that Nider was wearing new leather "dress shoes" with two-inch heels at the time of her fall.[13] Republic also argued: "[W]here the condition of the garage was open and observable by the plaintiff" and she

"admits that she would park there in the face of any danger, she cannot later claim fault when she has an unfortunate step."

¶ 32 To the extent that Republic made this argument in support of the contributory negligence defense asserted in its answer, Republic argued that Nider's own negligence or assumption of risk, in combination with its negligence, caused her injury. This argument is entirely inconsistent with Republic's claim of no duty. Where there is no duty, there can be no liability. *Flanders v. Crane Co.,* 1984 OK 88, ¶ 12, 693 P.2d 602, 606. In any event, where there is conflicting evidence regarding a defendant's "open and obvious" defense, these issues cannot be resolved on summary judgment. Okla. Const. art. 23, § 6 (providing that "[t]he defense of contributory negligence or of assumption of the risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."). *See also Byford v. Town of Asher,* 1994 OK 46, n. 28, 874 P.2d 45, 55 n. 28 (Opala, J., concurring)(defense that plaintiff should have used an alternate route, alleged to be safer, "presents no more than an element of contributory negligence"); *Henryetta Constr. Co. v. Harris,* 1965 OK 88, ¶ 4, 408 P.2d 522, 531, (supplemental opinion on reh'g)(noting that plaintiff's familiarity with the physical condition that causes injury neither conclusively bars his right of recovery nor makes him guilty of contributory negligence).

### III. Applicability of Section 109

¶ 33 Section 109 [14] is a statute of repose, which "restricts potential liability by limiting the time during which a cause of action can arise:" *Smedsrud,* 2002 OK 87 at n. 35, 61 P.3d at 897, n. 35. It is undisputed that the ramp and handrail were designed and constructed more than ten years before

---

**13.** In her deposition, Nider stated that she could "guarantee" that the boots were not made of leather because she "didn't pay that much money for them," and while the boots were new, she had worn them home from the store before wearing them the day of her fall.

**14.** Section 109 provides that no action in tort to recover damages for injury to the person arising out of "any deficiency in the design, planning,

supervision or observation of construction or construction of an improvement to real property ... shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning or supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement."

Nider's injury. As Republic interpreted Nider's petition in light of her deposition testimony,[15] her only complaints about the ramp and handrail related to their "construction." Republic argued, therefore, that Nider's claim for alleged defects in the construction or design of the ramp and handrail were barred by section 109. Republic, however, misinterpreted Nider's claim.

¶ 34 In her petition, Nider clearly alleged that she was an invitee on Republic's premises and fell as a result of Republic's failure to keep and maintain the ramp in a safe and proper condition. In her response to Republic's summary judgment motion, Nider specifically asserted that she "fell because of worn protective coating" and specifically disavowed any claim based on defects in the design or construction of the ramp and handrail. This Court finds that Nider did not allege a claim for negligent design or construction of the ramp. Rather, she alleged that Republic failed to exercise reasonable care to maintain the premises in a safe condition. Republic's section 109 argument, therefore, did not establish that a trial of Nider's claim was unnecessary.

## CONCLUSION

¶ 35 The evidentiary materials of record establish that, in this action based on premises liability, Nider's status was that of an invitee. Therefore, Republic had a duty of reasonable care to make and maintain its premises safe for her use. *Brown,* 1997 OK 32 at ¶ 7, 935 P.2d at 322. Material facts are in dispute regarding whether Republic breached this duty, as they are in dispute with respect to whether the condition of the ramp was an open and obvious hazard. The Trial Court, therefore, erred in granting summary judgment to Republic. Consequently, the Trial Court abused its discretion in denying Nider's motion for new trial. Accordingly, we reverse the order granting summary judgment and remand the case for further proceedings consistent with the pronouncements herein.

¶ 36 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

GOODMAN, J., concurs, and WISEMAN, P.J., concurs in part, dissents in part.

WISEMAN, P.J., concurring in part, dissenting in part:

¶ 1 I concur with the majority in Parts I and III of the analysis but am unable to concur in Part II on the issue of the nature of the ramp's condition, *i.e.,* Republic's "open and obvious" argument.

¶ 2 I agree that Oklahoma case law holds that if

> conflicting inferences may be drawn from the facts and circumstances in evidence as to whether the offending hazard did have a "deceptively innocent appearance", or its extent could not be anticipated, neither the trial court nor this court may declare that the peril was obvious and apparent and that recovery is precluded as a matter of law.

*Jack Healey Linen Serv. Co. v. Travis,* 1967 OK 213, ¶ 9, 434 P.2d 924, 928. The majority also cites another parking ramp case, *Brown v. Nicholson,* 1997 OK 32, 935 P.2d 319, for the proposition that plaintiff's familiarity with the condition of the ramp is not fatal to her recovery. However, in *Brown,* as the Supreme Court opinion points out, the record was conflicting on when the weather strips in question were placed on the ramp—Brown said shortly before her fall, and the owners said possibly two years before her fall. Reasonable minds, under this conflicting evidence, could draw different inferences and conclusions as to whether this weather stripping addition was of recent vintage and whether it created a "deceptively innocent appearance" which may not have been familiar to Brown.

¶ 3 The *Jack Healey* case also presented a change in conditions familiar to the plaintiff. She knew the area in question was always damp and sometimes covered with water, but she had always been able to pass around it without having to walk through it. But on the morning she fell, "the 'whole area' was covered by water and she could not 'walk

---

15. *See supra,* note 1.

around' it" and could not "readily perceive that the water was so deep that the soap in it would cover the soles of her shoes." *Jack Healey,* 1967 OK 213 at ¶ 7, 434 P.2d at 927. The Supreme Court stated:

> This case is distinguishable from *Beatty v. Dixon,* ... 408 P.2d 339. The evidence there failed to show that the defect, known to the plaintiff, may have had a deceptively innocent appearance or that the risk of injury from it had increased because of a sudden or unanticipated change.

*Id.* at ¶ 10, 434 P.2d at 928.

¶ 4 A review of the undisputed facts, and it should be noted that Nider does not dispute any of the facts set forth by Republic that are material to the issue of the ramp's condition,[1] shows that Nider had traversed this ramp twice a day to and from work for 8 months before she fell and that the condition of the ramp was unchanged this entire time. Her complaint is that the protective coating on the ramp was worn and that the coating and handrail did not extend the full length of the ramp. She stated in her deposition that nothing prevented her from seeing the condition of the protective coating every day for eight months before this incident. Nider has never claimed that this was a *known* danger from which Republic failed to protect her; she has always claimed that she failed to notice or appreciate the danger this ramp presented. I would ask the majority to respond to the question at the heart of this controversy: What was hidden (*i.e.,* not known or familiar) to this plaintiff about the condition of the ramp and handrail?[2] Put another way, under the specific circumstances of this case, what is the particular risk from the observable lack of protective coating that is incapable of appreciation? *See id.* at ¶ 9, 434 P.2d at 927–28.

¶ 5 I find the facts in this case aligned more closely with *Beatty* and *Jackson v. Land,* 1964 OK 102, 391 P.2d 904, than with *Brown* or *Jack Healey.* This condition had existed and been used for many months; there is nothing "deceptively innocent" about it, nor has the risk of injury been increased by some new or unanticipated change in the condition.[3]

¶ 6 If the majority is correct that the ramp and handrail could be considered a hidden danger to Nider under the circumstances presented, then it should address more substantively the issue of the effect of the warning painted on the ramp shown in the photograph Republic submitted with its motion.[4] Although Nider recites without reference to any evidentiary material that "[t]here were no signs warning patrons to 'watch your step' on or near the ramp," it is plain from the photo that "Watch Your Step" is painted clearly on the ramp on the protective surface. If one accepts the majority's conclusion that the condition of the ramp's coating could be considered a hidden danger, then Republic's duty is either to correct the dangerous condition hidden from persons in Nider's position or to warn them of its existence. OUJI–CIV No. 11.10. The warning on the ramp appears to satisfy Republic's duty to Nider and should be addressed.

¶ 7 For these reasons, I concur with Parts I and III of the majority's analysis and conclusions and dissent from Part II. The trial court's judgment should be affirmed.

1. Nider did not comply with the Rule 13 requirement of separately stating and numbering each specific material fact claimed to be in controversy or the requirement of making reference to the pages, paragraphs, or lines of the evidentiary materials supporting or establishing that fact. The only facts in Nider's response to Republic's motion which are supported by references to attached evidentiary materials relate to Nider's reasons for choosing her parking location and for taking the ramp rather than the stairs.

2. There can be no question that the handrail's condition of not extending the full length of the ramp is open and observable, nor can there be any question that the trial court was correct to remove this issue from jury consideration. The trial court's decision on this issue should be affirmed.

3. The only new condition present was the pair of new, non-leather boots which Nider was wearing for the first time that day.

4. That this photograph depicts the location's condition on the day of the incident is undisputed by Nider.