2008 OK 45

Robert SCOTT, Jr.; Amanda Scott; and Jessica Ball, Owen Ball, and Daniel Scott, Minor Children, by and through their parents and next friends, Robert Scott, Jr., and Amanda Scott, Plaintiffs/Appellants/Respondents,

v.

ARCHON GROUP, L.P., A Delaware corporation; Prime Financial corporation; Northwest Tower Limited Partnership, an Illinois corporation; Winthrop Financial Co., Inc., a Massachusetts corporation; Sandi Leech; W9/PHC Real Estate Limited Partnership, a Delaware limited partnership; and Trammell Crow Operations, Inc., a foreign corporation, Defendants/Appellees/Petitioners.

No. 102,782.

Supreme Court of Oklahoma.

May 6, 2008.

As Corrected May 14, 2008.

Rehearing Denied Sept. 8, 2008.

John W. Norman, John B. Norman, Jerri K. Bird, Norman & Trammel, Oklahoma City, OK, and Gary B. Homsey, Jeffrey M. Cooper, Kevin E. Hill, Homsey, Cooper, Hill & Associates, Oklahoma City, OK, for Plaintiffs/Appellants.

Daniel K. Zorn, Jason C. Wagner, Collins, Zorn, Wagner & Gibbs, P.C., Oklahoma City, OK, for Defendants/Arcane Group, L.P., and W9/PHC Real Estate Limited Partnership.

Joe E. Edwards, Joel W. Harmon, Lisa M. Molsbee, Day, Edwards, Propester & Christensen, Oklahoma City, OK, and Kathy R. Neal, William S. Leach, Eldridge Cooper Steichen & Leach, LLC, for Defendant/Appellee Prime Financial Corporation.

Gerald E. Durban, Glen Mullins, R. Ryan Deligans, Durbin, Larimore & Bialick, Oklahoma City, OK, for Defendants/Appellees Trammell Crow Operations, Inc., and Sandi Leech.

EDMONDSON, V.C.J.

¶ 1 The dispositive issue before us is whether the trial court erroneously granted summary judgment to the defendants in this premises liability action. We answer in the negative. We find the evidence provides undisputed proof of the open and obvious condition of the premises, supporting but a single inference that favors nonliability of the defendants based on absence of duty to the plaintiffs. We previously granted certiorari and now reverse the opinion of the Court of Civil Appeals and affirm the judgment of the trial court.

¶ 2 Mr. Scott was seriously injured on February 19, 2002, in a single-vehicle accident on the roof level parking deck of the Oklahoma City office building where he worked. The building, known as "The Tower," had parking on two levels. In order to prevent overweight trucks from parking on the upper deck, a steel barrier beam had been erected across the entrance ramp to stop vehicles taller than 8 feet 6 inches from entering. Mr. Scott was driving a truck which was 11 feet tall. When the truck struck the beam, the beam was knocked loose and fell onto the cab of the truck,

crushing it and rendering Mr. Scott a quadriplegic.

¶ 3 Plaintiffs, Mr. Scott, his wife and their children, brought this action against multiple defendants: the owners of The Tower, W9/PHC Real Estate Limited Partnership(W9/PHC); its assets manager, Archon Group, L.P.(Archon); the building's on-site property manager, Trammell Crow Operations, Inc. (Trammell), and its senior managing employee, Sandi Leech (Leech); as well as former owners of The Tower, Northwest Tower Limited Partnership, Inc. (Northwest) and its partner, Winthrop Financial Co., Inc. (Winthrop), and Prime Financial Corporation (Prime).

¶ 4 Plaintiffs alleged Mr. Scott's injuries resulted from breaches of the defendants' respective duties to exercise reasonable care in that they negligently erected and maintained the beam across the ramp and failed to warn and protect from dangers which the defendants knew about or should have foreseen. Plaintiffs alleged Mr. Scott was an invitee, and that the manner of the beam's installation constituted a violation of the defendants' duty to keep the premises reasonably safe for him, in that the ease with which the beam could be toppled and the resulting danger of serious injury posed by the weight of it constituted a hidden snare, trap or pitfall.

¶ 5 All defendants moved for summary judgment and asserted that the undisputed facts showed they had no duty to protect or warn Mr. Scott because the beam was an open and obvious condition. Defendants also contended Mr. Scott became a trespasser by reason of his attempt to enter into an area where trucks were specifically prohibited. They further argued that even if even if he should establish his status as an invitee rather than a trespasser, they had no legal duty to warn him because the beam posed an open and obvious danger which should have been observed by any person exercising ordinary care for his own safety. Defendants contend Mr. Scott tried to drive his 11–foot–high truck through an 8 foot 6 inch opening in daylight despite the facts that the barrier beam was in plain view, its clearly marked height-clearance warning visible to all, and there were also height-clearance warnings on his vehicle. Former owners asserted they had no duty to Mr. Scott as they did not have possession or control of the property, nor did they have any knowledge regarding concerns about the beam that should have been revealed by them to their vendees.

¶ 6 Without specifying her reasons, the trial court granted each defendant summary judgment. Plaintiffs appealed, claiming that: (1) whether the clearance bar was open and obvious or a hidden hazard was a question of fact for the jury, (2) whether plaintiff was an invitee or a trespasser was a question of fact for the jury, and (3) under the facts of this case Prime is liable to Mr. Scott even though it sold the land to W9/PHC four years prior to his injury. The Court of Civil Appeals, in an unpublished decision, affirmed summary judgment granted in favor of the more remote owners, Northwest and Winthrop, owners of the property from November 1983 to February 1997, and Archon, W/9PHC's assets manager. But that court reversed summary judgment granted in favor of W9/PHC, Trammell, Leech and Prime, the former owner which sold the property to W9/PHC.

¶ 7 Prime had been the mortgage lender to Northwest and Winthrop. In February 1997, Prime exercised its option to purchase the collateral property in order to market and sell it, which it did in March 1998, to W9/PHC. Pursuant to successive written contracts, Trammell had provided property management services as an independent contractor to The Tower since 1996, first with Northwest and continuing on with Prime, and then with W9/PHC. Those defendants individually sought certiorari. We hold (1) defendants had no legal duty to protect or warn Mr. Scott as the beam was open and obvious as a matter of law, (2) because the condition was open and obvious it is unnecessary to determine Mr. Scott's precise status, and (3) as a former owner of the building, Prime is not liable for Mr. Scott's injury.

¶ 8 Summary judgment is proper where there is no substantial dispute as to any material fact, and it appears that one party is entitled to summary judgment as a matter of law. *Beatty v. Dixon*, 1965 OK 169, 408 P.2d 339; *Weldon v. Seminole Mu-*

*nicipal Hospital,* 1985 OK 94, 709 P.2d 1058, 1059. Our review is *de novo;* in addition to the pleadings, we may consider evidentiary materials submitted by the parties to the trial court such as depositions, affidavits, admissions, and answers to interrogatories, viewing all evidentiary inferences in the light most favorable to the opposing nonmovant. *Hargrave v. Canadian Valley Electric Cooperative, Inc.,* 1990 OK 43, 792 P.2d 50, 55.

¶ 9 The record shows numerous uncontroverted facts presented to the trial court. The steel beam (variously referred to by the parties as a "height bar," "warning bar," "clearance beam" and "barrier beam") was set across the south access ramp to the upper parking deck on two steel posts that were anchored in concrete. The beam was at a height of approximately nine feet and it was 12 feet long and weighed 1,843 pounds. The beam had lettering on the side facing oncoming traffic which was ten inches high and clearly visible, reading:

"NO TRUCKS VISITOR PARKING CLEARANCE 8'6"."

¶ 10 Mr. Scott's employer's office was in The Tower and on a daily basis for more than two years before the accident, he had driven up the south ramp, passed under the beam, entered the upper parking deck and parked. Mr. Scott had the option of parking in the garage beneath the upper deck, but he preferred parking on the upper level and always did so. Mr. Scott routinely drove his own vehicle, a Ford Expedition, to work; however, on the day in question he was driving the eleven-foot-high U–Haul truck because he was moving some family furniture. A warning sign prominently displayed on the dashboard read "11 foot Clearance Requirement" and a similar warning sign was on the outside of the truck where the driver could see it in the rear view mirror. Mr. Scott had rented a truck like this one on two previous occasions.

¶ 11 Mr. Scott's accident occurred in daylight at about 8:30 in the morning as he was arriving for work. Mr. Scott stated that as he approached the south ramp he checked to make sure no traffic was coming toward him and he then proceeded slowly up the ramp whereupon his truck struck the beam which collapsed onto the cab, causing injuries which left Mr. Scott paralyzed from the chest down.

¶ 12 Mr. Scott testified that he did not recall seeing the clearance beam there that day as he drove up the ramp. He had no explanation for not noticing it. He further stated he did not recall ever seeing the beam at any time in the more than two years prior to the accident, although he passed under it on a daily basis. He had no explanation why he would not have been aware of the existence of the beam. He also did not see the height clearance warnings in the truck, and he had no explanation why he had not seen them. Mr. Scott stated there were no obstructions or distractions which prevented him from seeing the beam or its clearance warning or the warning signs on his truck. The police officer who investigated the accident stated that Mr. Scott told him he just forgot about the height of the truck.

¶ 13 The Tower was built in 1981 and was originally designed and constructed with the two separate parking areas, an upper deck parking lot for visitor parking and an underground parking garage. Because of concerns about load factors, weight restrictions were considered necessary to avoid a heavy vehicle parking on the roof and possibly falling through. In order to approve the construction of the building, the City of Oklahoma City required that the upper deck parking area be off-limits to trucks. The upper level Grading Plan provided: "Barriers shall be provided on 2nd level prohibiting vehicular traffic other than passenger vehicles." There has been a height beam with an 8 foot 6 inch clearance warning in 10 inch high letters on the south ramp since the building was built in 1981. There is a twin clearance beam on the north side of the building. Through the years, the entrance and exit functions had been rotated between the two ramps; but, since 1997, the south ramp has been limited to traffic going up for entrance into the upper level and the north ramp has been an exit ramp for traffic going down from the upper level. The function of the beam was to physically restrain a truck over the height limit from entering the upper parking deck.

¶ 14 Deposition testimony was given that from 1984 until 1992, there were approximately six incidents where the north clearance beam had been hit by trucks and knocked down which caused damage to the structure each time. In order to re-place the beam, repairs were required that involved moving the posts and reattaching them to the concrete. There were no injuries caused by those incidents, but probably twice the bar landed on the truck and damaged it.

¶ 15 In 1997, during the period of Prime's ownership, the clearance beam on the south ramp was hit by a delivery truck and the beam fell on the truck. The truck was damaged, but no injuries were sustained. The beam was reinstalled at the sole direction of Trammell. The costs of the repairs were such that Trammell was not required under the terms of its contract to inform Prime of the repair. There was no evidence that Prime had been advised of the incident or that it knew, or had reason to know, of the incident at any time before this lawsuit was filed. Prime denied having received any knowledge of the incident.

¶ 16 Plaintiffs submitted affidavits of two expert witnesses, both engineers. Mr. Charles Powell stated that the beam was secured with four expansion-steel bolts on each side which, he said, was an inadequate and defective manner of installation because of the beam's size and weight and represented a material design defect. Mr. Rick Gill opined that as a matter of due diligence, Prime "should have" conducted hazard analyses of the property both before and after its acquisition. He stated that had Prime done so, it "would have" found and remedied the hidden danger posed by the post/beam system and hazards hidden therein before the property was sold to W9/PHC. Mr. Gill expressed his view of Prime's obligation to conduct hazard inspections as though it were an affirmative duty of a purchaser as a matter of law, but he did not cite a source for the imposition of this duty.

■ ¶ 17 On certiorari, W9/PHC, Trammell and Leech contend that summary judgment was properly granted as they had no duty to Mr. Scott because the clearance beam was an open and obvious hazard. We agree. It is fundamental that three elements must be shown in order to establish actionable negligence: (1) existence of a duty on the part of the defendant to protect plaintiff from injury; (2) defendant's breach of the duty; and (3) injury to plaintiff proximately resulting therefrom. The threshold requirement in any case based on negligence is to establish the existence of a duty, for there can be no negligence in the absence of a defendant's duty to the plaintiff. Accordingly, the question of whether a duty exists to a particular plaintiff on the part of an alleged tortfeasor is properly a question of law for the court. *Sutherland v. St. Francis Hospital, Inc.,* 1979 OK 18, 595 P.2d 780, 783–784; *Turner v. Rector,* 1975 OK 172, 544 P.2d 507, 510; *See also Grace v. City of Oklahoma City,* 1997 OK CIV APP 90, 953 P.2d 69, 70.

■ ¶ 18 It is well-settled premises liability law that the duty of care which an owner or occupier of land has toward one who comes upon his or her land and is injured because of the condition of the premises, varies with the status occupied by the entrant. The determination of the entrant's status-based classification under traditional common law terms—trespasser, licensee or invitee—is therefore essential in resolving the issue of the existence of a duty. *McKinney v. Harrington,* 1993 OK 88, 855 P.2d 602.

¶ 19 In *Pickens v. Tulsa Metropolitan Ministry,* 951 P.2d 1079, 1997 OK 152, plaintiff, a homeless man, sued the owner of a homeless shelter for injuries he suffered when he fell off a retaining wall while sleeping on it. We set forth there the following pertinent and concise summary of our extensive case law regarding a land owner's status-based duty to one injured by a hazard on the premises:

To a trespasser, a landowner owes . . . only a duty to avoid injuring him wilfully or wantonly. To a licensee, an owner owes a duty to exercise reasonable care to disclose to him the existence of dangerous defects known to the owner, but unlikely to be discovered by the licensee. This duty extends to conditions and instrumentalities which are in the nature of hidden dangers, traps, snares, and the like. To an invitee,

an owner owes the additional duty of exercising reasonable care to keep the premises in a reasonably safe condition for the reception of the visitor. Even *vis-a-vis* an invitee, to whom a landowner owes the highest duty in this trichotomous classification system, the law does not require that the landowner protect the invitee against dangers which are so apparent and readily observable that one would reasonably expect them to be discovered. In other words, a landowner owes to an invitee, as well as to a licensee, a duty to protect him from conditions which are in the nature of hidden dangers, traps, snares and the like. A hidden danger within this rule of liability need not be totally or partially obscured from vision or withdrawn from sight; the phrase is used to describe a condition presenting a deceptively innocent appearance of safety 'which cloaks a reality of danger.' Furthermore, failure to remove known but obvious hazards by alteration or reconstruction of the premises is not a breach of the landowner's duty even to an invitee. Whether harm from an open and obvious defect is actionable depends on an objective standard of due care—i.e., whether under similar or like circumstances an ordinary prudent person would have been able to see the defect in time to avoid being injured. (Footnotes omitted). *Id.* at 1083–1084.

¶ 20 We found it unnecessary to resolve the issue of the precise entry status of the plaintiff in *Pickens,* concluding that even if, as he had argued, plaintiff was an invitee, the defendant landowner had breached no duty to him as the retaining wall from which he fell was an open and obvious condition, not a hidden danger, snare, or the like; it was clearly visible and did not have a deceptively innocent appearance.

¶ 21 In like manner, we find here that even if Mr. Scott was an invitee, rather than a trespasser, and thus was owed the highest duty of care by defendants, defendants breached no duty to him as the clearance beam was an open and obvious danger. As an invitee, defendants owed no legal duty to Mr. Scott to warn or otherwise protect him from the open and obvious danger of the beam and the obviously dangerous possible consequences of driving his 11–foot truck into the beam clearly marked as having an eight foot six inch clearance. Defendants' duty to keep the premises reasonably safe applied only to defects or conditions in the nature of hidden dangers, traps, snares, pitfalls and the like, which were not known to Mr. Scott and which would not be observed by him in the exercise of ordinary care.

¶ 22 Plaintiffs rely on *Woodis v. Oklahoma Gas and Electric Company,* 1985 OK 62, 704 P.2d 483, to argue that a material question of fact arises whether W9/PHC and Trammell could have reasonably anticipated Mr. Scott's presence in a tall truck because of the earlier incidents of trucks entering the ramp. If so, they contend, defendants' duty to him, even as a trespasser, was as great a duty as owed to the general public. *Woodis* is inapposite here because it did not present issues of premises liability regarding the duty of the landowner to an entrant of any status, trespasser or otherwise. Instead, *Woodis* presented the legal question of whether the electric company's alleged violation of the national safety code constituted negligence per se and a breach of duty owed to the public through invocation of a public policy regulation.

¶ 23 The evidentiary materials submitted to the trial court do not show the beam was a hidden danger or a snare, trap or the like or that it had a deceptively innocent appearance cloaking a reality of danger. Additionally, the "deceptively innocent appearance" argument urged by plaintiffs and advocated by their expert is not well taken under these facts, as Mr. Scott testified that he did not see the clearance beam at all. That being so, the case is entirely different from the situation presented where an entrant on the premises sees an obvious danger but it presents a deceptively innocent appearance which cloaks a reality of danger from the deceived entrant. *See, e.g., Southerland v. Wal–Mart Stores, Inc.* 1993 OK CIV APP 12, 848 P.2d 68 (injured customer who admitted she did not see open and patently obvious bright orange electric cord that caused her fall had no factual basis upon which to contend cord had deceptively innocent appearance).

¶ 24 The photographs submitted in the evidentiary materials show the clearance beam as being an open and patently obvious hazard. All witnesses stated they were aware of its existence across the ramp. The beam was not obscured or hidden. Mr. Scott acknowledged that his view of the beam was not interfered with in any way nor was he distracted as he approached it. Reasonable people could not differ over the fact that the twelve foot steel beam with letters ten inches high warning of the height clearance requirement was an open and obvious danger. There are no conflicting inferences that can be drawn from the facts and circumstances in evidence as to whether the hazard was hidden or had a deceptively innocent appearance. The danger of the beam was open and obvious and Mr. Scott failed to exercise ordinary care for his own safety to avoid an obvious danger. Recovery against W9/PHC, Trammell and Leech was precluded by law.

¶ 25 We agree with Prime that as the former owner of The Tower it had no duty to Mr. Scott. We recognize the basic rule that possession and control of real property is the fundamental requirement for ascribing liability for injury suffered thereon, and that once an owner parts with possession and control of the premises, the responsibility and liability, if any, for injury suffered on the property falls on the new owner. *See Shipley v. Bankers Life and Casualty Company,* 1962 OK 264, 377 P.2d 571, 573 (vendor who had surrendered possession, management and control of apartment hotel for six years to buyer under contract for sale was not liable for tenant's injury sustained as result of defect in elevator that existed when contract was entered into).

¶ 26 Plaintiffs acknowledge this general rule, but argue that even though Prime sold the property four years prior to Mr. Scott's 2002 accident, the foreseeability of harm by reason of the 1997 incident established a duty of care on the part of Prime. Plaintiffs rely on *Wofford v. Eastern State Hospital,* 1990 OK 77, 795 P.2d 516, 518, in support of their contention that in this case

foreseeability is the most important consideration in the establishment of Prime's duty so that a material question of fact exists as to whether Trammell informed Prime of that incident and the repair so that Prime knew, or should have known, of it and thereby had a duty to its vendee, W9/PHC, and third party, Mr. Scott.

¶ 27 *Wofford* is not applicable here, however, as it was concerned with the determination of duty under principles of general negligence, not those governing the law of premises liability. In *Wofford,* the mother of a mental patient brought suit for damages against a mental institution for its allegedly negligent release of the patient, who killed his stepfather two year later. We held the killing was too remote and unforeseeable to create any liability on the part of the hospital. *Wofford* did involve consideration of issues of foreseeability (as to the persons endangered by a patient's release) in the establishment of a duty (of the psychiatrist to exercise reasonable professional care in discharging patients whom he knows or should know have dangerous propensities), but those are not the principles which would govern the establishment of Prime's duty or absence thereof in this premises liability action.

¶ 28 We are not persuaded by plaintiffs' attempt to change a landowner's duty to an invitee with respect to open and obvious dangers by characterizing the issue as one of ordinary negligence and urging application of concepts of ordinary negligence. We have previously declined to depart from our support of common law principles of premises liability and do so again here. In *Sutherland v. St. Francis Hospital, Inc.,* 1979 OK 18, 595 P.2d 780, 781, we explained as follows:

> Land possessor's liability in negligence for harm occurring upon the premises varies with the status of the entrant complaining of injury. Definition of duty that marks out the limit of protection afforded an entrant broadens or narrows with the beneficial interest of the possessor in the presence of the other upon the land. This

has been the common law approach ever since landlord's sovereignty and immunity for acts done within the boundaries of his land gradually gave away to present-day civil accountability. When modern tort law finally incorporated possessor's liability, the concept of negligence came to be applied within the restrictive framework of relational, status-based duties. In short, the common law has never seen fit to extend its principles of general negligence (as they came to be fashioned in the last century) to govern harm occasioned on the premises of others. (Footnotes omitted).

¶ 29 For the same reason, plaintiffs' reliance on § 353 of the Restatement (Second) of Torts (1965) as coinciding with principles of foreseeability in general negligence law is also misplaced. That section sets out an exception to the general rule of vendor's nonliability for injuries that may come to a third party on the conveyed premises, providing a vendor may be subject to liability if he concealed or failed to disclose a condition of unreasonable risk to his vendee, which liability will continue only until vendee has reasonable opportunity to discover the condition. These liability issues are explained in the Restatement as follows:

§ 351. Dangerous Conditions Arising After Vendor Transfers Possession.

A vendor of land is not subject to liability for bodily harm caused to his vendee or others while upon the land by any dangerous condition, whether natural or artificial, which comes into existence after the vendee has taken possession.

§ 352. Dangerous Conditions Arising after Vendor Transfers Possession.

Except as stated in § 353, a vendor of land is not subject to liability for bodily harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

§ 353. Concealed Dangerous Conditions Known to Vendor.

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, involving unreasonable risk to persons upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with consent of the vendee or his subvendee after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

¶ 30 § 353 has not been adopted by this Court and there is no evidence showing it should be applied in this case. There is no evidence showing Prime was ever aware or should have been aware of the incident of the beam falling during its ownership, and Prime denied that it had such knowledge. There is also no evidence that Prime concealed or failed to disclose anything about the beam to its vendee. Plaintiffs' expert's opinion suggesting that Prime had a "duty" to investigate the property in order to find, analyze and repair the hazards before and after the purchase is unsupported in the law.

¶ 31 The clearance beam was an open and obvious hazard and could easily have been seen and avoided by Mr. Scott had he exercised ordinary care for his own safety. As a matter of law, plaintiffs failed to show a breach of duty by defendants. The opinion of the Court of Civil Appeals is reversed. The trial court's summary judgment in favor of defendants is affirmed.

¶ 32 WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, TAYLOR, JJ., Concur.

¶ 33 KAUGER, WATT, COLBERT, JJ., concur in part, dissent in part.

¶ 34 REIF, J., Disqualified.

KAUGER, J., with whom WATT, J., and COLBERT, J., join, concurring in part, dissenting in part:

¶ 1 I dissent to the majority's holding that "the evidence provides undisputed proof of the open and obvious condition of the premises, supporting but a single inference that favors nonliability of the defendants based on absence of duty to the plaintiffs." The summary judgment materials present disputed questions of fact which have been raised regarding the "open and obvious" nature of an allegedly "unsafe and inherently dangerous" 1843 pound steel beam which clearly preclude summary judgment.

## FACTS

### a. Undisputed Facts

¶ 2 On February 18, 2002, the appellant, Robert Scott (Scott), rented a large U–Haul truck (U–Haul), and loaded it with furniture which he intended to take to an auction house during his lunch hour the next day. On the morning of February 19, 2002, Scott drove the U–Haul truck from his home in Edmond, Oklahoma, to his work site at an Oklahoma City office building known as "The Tower." Scott was employed as an audio-visual coordinator for Tower tenant, Ackerman–McQueen Advertising.

¶ 3 The Tower parking garage consisted of two levels-a lower level deck and an upper level, open air deck. Scott had been driving up the south, upper deck access ramp, and parking his vehicle, a Ford Expedition, on the upper deck for nearly two years. Scott approached the parking garage in the U–Haul and attempted to enter the ramp leading to the upper deck. The U–Haul required a clearance of 11 feet, but the garage had installed a steel barrier beam (clearance bar/beam) across the ramp to stop vehicles taller than 8 feet 6 inches from entering the upper deck.

¶ 4 The purpose of the beam was a "safety" measure and it was intended to "stop" heavy trucks in their tracks from entering the upper level and risk falling through to the level below. No warnings about weight limits were posted. The clearance bar had been in place since the structure was built in 1981. The City of Oklahoma City required that the upper level be off limits to heavy trucks. Another clearance bar is located on the north side of the building as well. Through the years the north and south ramps have alternatively functioned as either entrance or exit ramps, but since 1997, the south ramp has served as the entrance to the upper level and the north ramp has served as the exit.

¶ 5 The 1843 pound beam was approximately 26 feet long and 9 feet tall. It was constructed of welded 8 inch steel square tubing, and it sat on two steel posts that were approximately 8 inches by 12 inches. The barrier was anchored to the concrete with four 3/4 inch × 6 inch long expansion bolts. The beam was marked with a warning across the top, facing oncoming traffic, in 10 inch white letters reading:

"No Trucks. Visitor Parking.
Clearance 8'6""

¶ 6 Scott did not see the beam, nor did he have an explanation for not seeing it, other than he was watching for oncoming traffic. Consequently, he struck it with the U–Haul while attempting to drive up the ramp. The truck knocked the beam loose from its anchors and it fell onto the cab of the truck, crushing it and rendering Scott a quadriplegic. On February 18, 2004, Scott and his family brought a lawsuit against various defendants who were involved in ownership or management of the parking garage (collectively, parking garage), alleging that Scott's injuries resulted from breaches of the defendants' respective duties to exercise reasonable care. He alleged that they: 1) negligently erected and maintained the beam across the ramp; 2) failed to warn and protect from the dangers which they knew about or should have foreseen; 3) installed the

beam in such a manner as to constitute a violation of their duty to keep the premises reasonably safe; and 4) created a hidden snare, trap or pitfall through their installation of a beam which toppled easily and posed serious danger of injury by its weight.

¶ 7 All of the defendants moved for summary judgment and asserted that the undisputed facts showed that they had no duty to protect or warn Scott because the beam was an "open and obvious" danger. They also insisted that: 1) even if Scott could establish that he was an invitee, rather than a trespasser, they had no legal duty to warn him because the beam posed an open and obvious danger which should have been observed by any person exercising ordinary care for his own safety; and 2) the beam was in plain view and clearly marked with clearance warnings and the height-clearance warnings were posted plainly on the U–Haul dashboard and on the outside of the truck.

### b. Disputed Facts

¶ 8 The materials attached to the motions for summary judgment and responses reveal several relevant, disputed facts. For instance, between 1984 and 1992, there were approximately half a dozen incidents where the north clearance beam had been hit by trucks and knocked down. After each incident, the beams were moved, the old concrete holes filled, and the posts were reattached to the concrete. A physical inspection of the property reveals the areas where the posts have been moved from place to place and bolt holes have been filled with concrete. While no injuries were reported, the bar may have landed on trucks at least twice in one year. Most of the incidents were likely caused by commercially licensed, professional truck drivers. The parking garage insists that not all of the concrete filled holes were evidence of prior attachments of safety beams, but, instead, could have been from other signs which existed in the past.

¶ 9 In 1997, the clearance bar on the south ramp was hit by an Airborne Express commercial delivery truck and it fell on the

truck. The truck was damaged, but no injuries were sustained. The beam was reinstalled. Scott's accident would have been the eighth known accident in approximately 20 years. Engineers reported that the beams were inadequately secured with bolts which appeared to have become loose and secured with wire in an attempt to make them fit better. The engineers also reported that because of the beam's size and weight, it was defectively installed and constituted a hazard which would easily topple over when hit and which would not be readily observed by a driver.

¶ 10 The beam is so heavy that a crane is required to lift it for reinstallation. While the photographs submitted show that the beam had a visible warning posted on it, it is not clear merely by looking at the beam exactly what material it was made of or how heavy it was. The engineers insist that there were many alternative choices that would have posed a significantly lower risk of injury which were available for warning and stopping trucks from entering the upper level. The clearance bar, as it was installed, served as a booby trap to create a life threatening hazard.

### c. Procedural Facts.

¶ 11 Without specifying the reasons, the trial court granted each defendant summary judgment on October 28, 2005. Scott appealed on November 16, 2005, arguing that the trial court erred in granting summary judgment because whether the clearance bar was open and obvious or a hidden hazard was a question of fact for the jury. The Court of Civil Appeals, in an unpublished decision, affirmed summary judgment granted in favor of some of the defendants, but reversed as to others. It also recognized that under the rules pertaining to summary judgment, fact questions had been raised regarding whether the 1843 pound beam was "open and obvious" and whether the beam was an inherent danger because of its inappropriate, unsafe installation.

¶ 12 **UNDER THE FACTS PRESENTED, MATERIAL FACT QUESTIONS EX-**

IST AS TO WHETHER THE BEAM WAS AN OPEN AND OBVIOUS DANGER OR WHETHER IT WAS A DEFECTIVE, DECEPTIVELY DANGEROUS, HIDDEN HAZARD. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.

¶ 13 Scott asserts that the trial court erred in granting summary judgment to the parking garage because disputed fact questions exist as to whether the clearance bar was an open and obvious danger or a hidden hazard. The parking garage contends that because the beam was clearly visible and clearly marked for everyone entering the garage to see, it was an open and obvious danger for which it owed no additional duties towards Scott.

¶ 14 A party seeking to establish negligence must prove by a preponderance of evidence: 1) a duty owed by the defendant to the plaintiff to use ordinary care; 2) a breach of that duty; and 3) an injury proximately caused by the defendant's breach of duty.[1] A business owner owes a duty to exercise ordinary care to keep its premises in a reasonably safe condition for use of its invitees [2] and a duty to warn invitees of dangerous conditions upon the premises that are either known or should reasonably be known by the owner.[3] This duty extends to hidden dangers, traps, snares, pitfalls and the like which are not known to the invitee. However, the invitor has no duty to protect or warn about dangers which are open and obvious, and which would be discovered by the invitee in the exercise of ordinary care.[4] The facts of a each particular case are controlling upon questions of negligence in respect to dangerous conditions of premises, and whether such facts constitute negligence is ordinarily a question for the jury in an action by an invitee.[5]

¶ 15 The parking garage based its motion for summary judgment on its assertion that it owed no duty to Scott because the beam was an open and obvious danger. It contends that anyone, by looking at the beam, would either know or should know that it poses a danger of giving way and falling on a vehicle when it is struck. Scott challenges the parking garage's position. He argues that the parking garage created a condition which appeared as a safety measure, but because of its defective design, its deceptively heavy weight, and the ease with which it toppled over, in reality created a hidden, dangerous hazard. Consequently, the questions of safety and the obviousness of the beam were questions for the jury.

¶ 16 A motion for summary judgment may be filed if the pleadings, depositions, interrogatories, affidavits and other exhibits reflect that there is no substantial controversy

1. *Grover v. Superior Welding, Inc.*, 1995 OK 14, ¶ 5, 893 P.2d 500; *Wofford v. Eastern State Hosp.*, 1990 OK 77, ¶ 8, 795 P.2d 516; *Thompson v. Presbyterian Hosp.*, 1982 OK 87, ¶ 7, 652 P.2d 260.

2. Because the majority opinion determines that the clearance bar was an open and obvious danger, it does not reach the question of whether Scott was an invitee, or as the parking garage argues, a trespasser. Under the undisputed, facts, I would treat Scott, as a matter of law, as an invitee because he was employed by one of the businesses who was entitled to use the parking lot and because he never ventured into any prohibited area because he was stopped in his tracks by the beam before he ever reached such an area. However, even if one were to view Scott as a trespasser which required a lower level of duty owed to Scott, the alleged facts, when viewed in a light most favorable to Scott, *could also allow a jury to conclude that the*

parking garage acted in a wilful and wanton manner by repeatedly installing an unsafe beam in an unsafe manner after vehicles struck it eight times in the last 20 years.

3. *Phelps v. Hotel Management, Inc.*, 1996 OK 114, ¶ 6, 925 P.2d 891; *Taylor v. Hynson*, 1993 OK 93, ¶ 16, 856 P.2d 278; *Williams v. Safeway Stores, Inc.*, 1973 OK 119, ¶ 3, 515 P.2d 223.

4. *Woods v. Fruehauf Trailer Corp.*, 1988 OK 105, ¶ 19, 765 P.2d 770; *Nicholson v. Tacker*, 1973 OK 75, ¶ 9, 512 P.2d 156; *Beatty v. Dixon*, 1965 OK 169, ¶¶ 8–10, 408 P.2d 339.

5. *Jack Healey Linen Service Co. v. Travis*, 1967 OK 213, ¶ 0, 434 P.2d 924; *Henryetta Construction Co. v. Harris*, 1965 OK 88, ¶ 11, 408 P.2d 522, 28 A.L.R.3d 876; *Pruitt v. Timme*, 1959 OK 276, ¶ 8, 349 P.2d 4.

as to any material fact.[6] Even when basic facts are undisputed, motions for summary judgment should be denied, if from the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts.[7] Summary judgment is proper only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law.[8]

¶ 17 All conclusions drawn from the evidentiary material submitted to the trial court are viewed in the light most favorable to the party opposing the motion.[9] Before a motion for summary judgment under Rule 13, 12 O.S. Supp.2002, Ch. 2, App. Rules for the District Courts may properly be granted, the movant must show that there is no disputed issue of material fact.[10] Accordingly, if, after considering the evidentiary materials attached the motion for summary judgment and the response in a light most favorable to Scott, a disputed question of fact remains, then the trial court erred in granting the summary judgment motion.

¶ 18 A hidden danger need not be totally or partially obscured from vision or withdrawn from sight; the phrase is used to describe a condition presenting a deceptively innocent appearance of safety which cloaks a reality of danger.[11] In *Jack Healey Linen Service Co. v. Travis*, 1967 OK 213, ¶ 9, 434 P.2d 924, the Court in addressing whether the question of an accumulation of water constituted a hidden hazard explained:

> ... ¶ 9 Plaintiff's familiarity with the general physical condition which may be responsible for her injury does not of itself operate to transform the offending defect into an apparent and obvious hazard. Mere knowledge of the danger without full appreciation of the risk involved is not sufficient to bar plaintiff's right of recovery.... While the general physical condition might be familiar to the actor, a particular risk from the known defect could nevertheless, under the circumstances of a given occasion, be incapable of apprecia-

6. *Phelps v. Hotel Management, Inc.,* see note 3, supra at ¶ 17; *Roach v. Atlas Life Ins.,* 1989 OK 27, ¶ 15, 769 P.2d 158; Rule 13, 12 O.S. Supp. 2002, Ch. 2 App. Rules for the District Courts provides in pertinent part:
    a. A party may move for either summary judgment or summary disposition of any issue on the merits on the ground that the evidentiary material filed with the motion or subsequently filed with leave of court show that there is no substantial controversy as to any material fact....
    b. Any party opposing summary judgment or summary disposition of issues shall file ... a concise written statement of the material facts as to which a genuine issue exists and the reasons for denying the motion; ... the adverse party shall attach to the statement evidentiary material justifying the opposition to the motion, but may incorporate by reference material attached to the papers of another party. In the statement, the adverse party or parties shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages and paragraphs or lines of the evidentiary materials. All material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment or summary disposition unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material. If the motion for summary judgment or summary disposition is granted, the party or parties opposing the motion cannot on appeal rely on any fact or material that is not referred to or included in the statement in order to show that a substantial controversy exists....

7. *Phelps v. Hotel Management, Inc.,* see note 3, supra; *Markwell v. Whinery's Real Estate Inc.,* 1994 OK 24, ¶ 24, 869 P.2d 840.

8. *Phelps v. Hotel Management, Inc.,* see note 3, supra; *Carris v. John R. Thomas & Assoc.,* 1995 OK 33, ¶ 16, 896 P.2d 522; *Roach v. Atlas Life Ins. Co.,* see note 6, supra.

9. *Phelps v. Hotel Management, Inc.,* see note 3, supra; *Ross v. City of Shawnee,* 1984 OK 43, ¶ 16, 683 P.2d 535.

10. Rule 13, 12 O.S. Supp.2002, Ch. 2 App. Rules for the District Courts, see note 6, supra; *Phelps v. Hotel Management, Inc.,* see note 3, supra; *Roper v. Mercy Health Center,* 1995 OK 82, ¶ 4, 903 P.2d 314.

11. *Pickens v. Tulsa Metropolitan Ministry,* 1997 OK 152, ¶ 10, 951 P.2d 1079.

tion. If, as here, conflicting inferences may be drawn from the facts and circumstances in evidence as to whether the offending hazard did have a 'deceptively innocent appearance', or its extent could not be anticipated, neither the trial court nor this court may declare that the peril was obvious and apparent and that recovery is precluded as a matter of law. The question is one for the jury. . . .

¶ 19 The majority relies on *Pickens v. Tulsa Metropolitan Ministry,* 1997 OK 152, ¶ 10, 951 P.2d 1079. *Pickens* involved a homeless shelter in Tulsa which had on its premises a retaining wall without guardrails or barriers. When Pickens rolled off of the top of the wall in his sleep and was injured, he sued the owners and architect alleging negligence. The Court determined that the concrete retaining wall was an open and obvious danger as a matter of law and that, as such, recovery was precluded. While the legal premise of *Pickens* is correct, its application to the facts of this cause is not. Nothing about the retaining wall in *Pickens* was hidden or obscured, undiscoverable or in fact undiscovered. The wall was not defective. It did not collapse causing a fall or collapse and fall upon anyone.

¶ 20 Here, the evidentiary materials show that Scott did not see the beam, but that it was clearly marked, and nothing was obstructing his vision of it. This only shows that the beam, itself, could have been seen. The evidentiary materials are not dispositive of material fact questions concerning whether the beam was open and obvious or whether it posed a hidden danger and was defective in design. The fact that the clearance bar may have been hit at least 8 times raises a jury question as to whether the beam, itself, was open and obvious—whether under similar or like circumstances an ordinary prudent person would have been able to see the beam in time to avoid being injured—much less an open and obvious "danger."

¶ 21 The stated purpose of the beam was that it was installed as a "safety" measure to "stop" trucks from entering the upper level, but according to the disputed facts, it was defectively designed and, in fact, created a life threatening, hazardous condition. Nothing in the record mentions the speed at which Scott may have been traveling, but a large U–Haul traveling up a ramp would not likely have been traveling very fast. Yet, it is not readily apparent from the photographs that the beam weighed nearly a ton and that it would so easily topple over and crush a cab of a truck when hit at a low rate of speed. At the very least, reasonable persons could differ as to these material questions and summary judgment was improper.

## CONCLUSION

¶ 22 The purpose of summary adjudications is not to substitute a trial by affidavit for one by jury, but rather to afford a method of summarily terminating a case where only questions of law remain.[12] When uncontroverted proof lends support to conflicting inferences, the choice to be made between the opposite alternatives does not present an issue of law, but rather one for the trier of fact.[13] Based on the evidentiary materials presented in connection with the summary judgment motion, reasonable minds could differ, after concerning all the evidence and its reasonable inferences, as to whether the clearance bar was an open and obvious danger or a hidden hazard. The summary judgment motion offered by the parking garage falls short of showing the absence of a genuine issue of material fact. Accordingly, the trial court erred when it entered summary judgment in favor of the parking garage.

**12.** *Martin v. Aramark Services, Inc.,* 2004 OK 38, ¶ 12, 92 P.3d 96; *Bowers v. Wimberly,* 1997 OK 24, ¶ 18, 933 P.2d 312; *Stuckey v. Young Exploration Co.,* 1978 OK 128, ¶ 15, 586 P.2d 726.

**13.** *Martin v. Aramark Services, Inc.,* see note 12, supra; *Walters v. J.C. Penny Co., Inc.,* 2003 OK 100, ¶ 13, 82 P.3d 578.