2013 OK CIV APP 89

Brian GOBBLE, Individually and Dena Parsons, Individually and as Special Administrator of the Estate of Michael Parsons, Deceased, Plaintiffs/Appellants,

v.

CHESAPEAKE ENERGY CORPORATION, Defendant/Appellee,

and

The Manitowoc Cranes, Inc.; Grove Worldwide, L.L.C., a Delaware Corp.; Scott–Macon Equipment Oklahoma, Inc.; Silvercliffe Construction Company; John Doe I, now identified as J & L Ventures, L.L.C., Successor to Anderson Safety and Compliance, L.L.C., and John Does 2–5, Defendants.

No. 111560.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 30, 2013.

Richard M. Fogg, Renee S. Eberhardt, Fogg Law Firm, El Reno, Oklahoma, and Michael Shane Lucado, Lucado Law Firm, Birmingham, Alabama, for Plaintiffs/Appellants.

Daniel E. Bryan, III, Thomas Knowlton Ishmael, Hornbeek, Vitali & Braun, P.L.L.C., Oklahoma City, Oklahoma, for Defendant/Appellee.

J. Parker Fauntleroy, Zachariah Wolfe, Schwartz, Junell, Greenberg & Oathout, L.L.P., Houston, Texas, and Gerald P. Green, John C. Lennon, Pierce, Couch, Hendrickson, Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for Defendant, Scott–Macon Equipment Oklahoma, Inc.

Cary E. Hiltgen, Brock C. Bowers, Anh Kim Tran, Hiltgen & Brewer, P.C., Oklahoma City, Oklahoma, for Defendants, The Manitowoc Cranes, Inc. and Grove U.S., L.L.C.

H. David Hanes, D. Levi Hanes, Hanes Law Firm, Yukon, Oklahoma, for Defendant, J & L Ventures, L.L.C.

BRIAN JACK GOREE, Judge.

¶1 We affirm the trial court's grant of summary judgment in this premises liability case. The owner of the premises, Chesapeake Energy Corporation, did not owe a duty in connection with the operation of the crane involved in the accident. Although Chesapeake exercised some control over the schedule for completing the construction project, and the site plan designating the work zones, the instrumentality that caused the injury was a crane that was allegedly unreasonably dangerous. It is undisputed that the crane was neither owned nor controlled by Chesapeake.

¶2 After the buildings on Chesapeake's Oklahoma City campus were damaged in a hail storm, Chesapeake contracted with Silvercliffe Construction Company to replace roofs and siding. Silvercliffe hired Rent–A–Crane to provide cranes and crane operators for the job. Michael Parsons and Brian Gobble were crane operators and employees of Rent–A–Crane. Parsons was killed and Gobble was injured when a component of the crane detached and fell on them.[1]

¶3 The accelerated procedure governs this appeal because it is brought from a summary judgment order made final by the express order of the trial judge.[2] Because appellate briefs are not filed under the accelerated procedure, we are constrained to rely on Appellants' petition in error to identify the issues submitted for our review.[3]

¶4 The threshold question in any negligence action is whether the defendant has a duty to the plaintiff[4] and therefore we will first address Appellants' allegations of error relating to Chesapeake's duty.

I

¶5 Parsons and Gobble were on the premises by invitation and for the commercial purpose of operating equipment to make repairs to Chesapeake's property. An independent contractor doing work on another's premises is an invitee. *McKinney v. Har-*

---

1. Gobble and Parsons' surviving spouse commenced this action against Chesapeake and Silvercliffe as well as the manufacturer and supplier of the crane (respectively, The Manitowoc Crane Company and Scott–Macon Equipment Oklahoma, Inc.). The trial court granted the motion for summary judgment filed by Chesapeake and Silvercliffe. On Plaintiffs' motion for reconsideration, the court vacated the summary judgment it had granted to Silvercliffe.

2. 12 O.S.2011 Ch. 15, App. 1, Okla. Sup.Ct. R. 1.36(a); 12 O.S.2011 § 994(A).

3. Rule 1.36(g), Rule 1.25(a), Rule 1.301, Form No. 5, *Vanguard Environmental, Inc. v. Curler*, 2008 OK CIV APP 57, ¶5, 190 P.3d 1158, 1161. Appellants ask that we review "any ruling made by the Court that there was nothing in the record that would support any claim for any cause of action against Chesapeake." This proposition is too general to permit our review. Rule 1.301, Form No. 5, Part VIII, instructs the appellant to "avoid general statements such as 'judgment not supported by law.'"

4. *Sholer v. ERC Management Group, LLC*, 2011 OK 24, ¶11, 256 P.3d 38, 43.

rington, *1993 OK 88, ¶ 8, 855 P.2d 602, 604.* "*An owner of premises who has engaged an independent contractor ·to do work on his premises owes to such invitee the duty to keep the premises reasonably safe for the performance of the work. Such duty applies to conditions which are in the nature of a hidden danger, traps, snares, pitfalls and the like which are not ordinarily known to an invitee who, if he does not observe them, can exercise no care to avoid injurious consequences; the owner is under no legal duty to alter the premises so as to eliminate known and obvious dangers, but an owner breaches his duty to an invitee by not warning him of hidden dangers.*" Davis v. Whitsett, *1967 OK 190, ¶ 5, 435 P.2d 592, 595. Appellants propose Chesapeake's duty is broader.*

¶ 6 Appellants argue Chesapeake had a duty to "lessen the risk or see that sufficient precautions [were] taken to protect" them. They propose the applicable duty stems from a "broader zone of danger" based on foreseeability. *Smith v. Speligene,* 1999 OK CIV APP 95, ¶ 11, 990 P.2d 312, 315. The argument is incorrect.

■ ¶ 7 Defining a duty based on foreseeability is a principle of general negligence which does not govern when the harm occurs on the premises of others. *Sutherland v. St. Francis Hospital, Inc.,* 1979 OK 18, ¶ 5, 595 P.2d 780, 781. The Supreme Court remains committed to common law duties in cases of premises liability: "We are not persuaded by plaintiffs' attempt to change a landowner's duty to an invitee with respect to open and obvious dangers by characterizing the issue as one of ordinary negligence and urging application of concepts of ordinary negligence." *Scott v. Archon Group, L.P.,* 2008 OK 45, ¶ 28, 191 P.3d 1207, 1213. Chesapeake did not owe Parsons and Gobble a duty to reduce or prevent risks based on the foreseeability of harm.

■ ¶ 8 According to *Davis,* Chesapeake's duty was limited to keeping its premises reasonably safe for the contractors to do their work. "This duty is qualified, however, by the rule that one who engages an independent contractor to do work for him, and who does not himself undertake to interfere with or direct that work, is not obligated to pro-

tect the employees of ·the contractor from hazards which are incidental to or part of the very work which the independent contractor has been hired to perform." *Hatley v. Mobil Pipe Line Company,* 1973 OK 42, ¶ 16, 512 P.2d 182, 186, quoting *Vecchio v. Anheuser-Busch, Inc.,* 328 F.2d 714, 718 (2nd Cir.1964). As long as the premises owner does not interfere with or direct the work, then the owner is not obligated to protect the worker against hazards "which were incidental to or part of the very work he was hired by the independent contractor to perform." *Marshall v. Hale–Halsell Co.,* 1997 OK 3, ¶ 11, 932 P.2d 1117, 1119.

¶ 9 Chesapeake claims it is an undisputed material fact that it neither interfered with nor directed crane operations and it is therefore entitled to judgment as a matter of law because it owed no duty to Parsons and Gobbler. Appellants argue Chesapeake's high degree of involvement on the work site created a duty, thus precluding summary judgment.

■ ¶ 10 In order to establish actionable negligence, a party must show (1) existence of a duty on the party of the defendant to protect plaintiff from injury; (2) defendant's breach of the duty; and (3) injury to plaintiff proximately resulting therefrom. *Scott,* 2008 OK 45, ¶ 17, 191 P.3d at 1211. A party moving for summary judgment may prevail by establishing there is no genuine issue of material fact as to at least one essential component of the plaintiff's theory of recovery. *Akin v. Missouri Pacific Railroad Co.,* 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044. If the defendant did not owe a duty to the plaintiff, there can be no liability for negligence as a matter of law. *Lowery v. Echostar Satellite Corp.,* 2007 OK 38, ¶ 12, 160 P.3d 959, 964. The question of whether a duty exists to a plaintiff on the part of an alleged tortfeasor is a question of law for the court. *Scott,* 2008 OK 45, ¶ 17, 191 P.3d at 1211. The appellate court's review of a grant of summary judgment is de novo. *Id.,* 2008 OK 45, ¶ 8, 191 P.3d at 1210. We must examine the evidence to determine whether Chesapeake interfered with or directed the

work such that it owed a duty to protect Appellants.

¶ 11 The accident occurred when Parsons and Gobble were stowing the crane's boom extension at the end of the day. A boom extension (sometimes referred to as a "jib") is a long, steel framework that extends the working reach of the boom. When not in use, the extension can be partially disconnected and locked into a stowage bracket alongside of the boom. Parsons and Gobble had difficulty manipulating the boom extension into its stowed position and could not understand the cause of the problem. They decided to use a sturdy section of wood to attempt to move the extension into position. While doing so, the boom extension detached from the boom and fell upon Parsons and Gobble.

¶ 12 The analysis set forth in *Hatley* and *Marshall* is applicable. First, we identify the hazard involved. Second, we ask whether the hazard was incidental to or part of the contracted work. Third, we consider whether the premises owner interfered with or directed the particular work.

¶ 13 The hazard was the risk that an operator would be injured while using the equipment. Parsons and Gobble were crane operators hired by Rent–A–Crane to use cranes to lift workers and materials onto Chesapeake's buildings for the purpose of replacing and repairing roofs. The hazard was incidental to and part of the contracted work. The pivotal question in this case is whether Chesapeake's involvement constituted interference or direction of the particular work such that it owed a duty.

¶ 14 Appellants contend Chesapeake interfered and directed the work by exercising control over the movement and placement of the cranes. The record includes e-mails showing Chesapeake's representative asked questions and gave directions concerning where the cranes should be located in relation to the buildings, parking lots, and streets. Chesapeake's concerns included efficient mobilization of the cranes to complete the roofing project on schedule, maintaining public and employee access to buildings during business hours, and preventing damage to trees and lawns. Appellants also offer evidence that Chesapeake generally supervised the work site and retained the right to approve stages of the project after advance notification.

¶ 15 The particular work in this case was the operation of the cranes. Chesapeake's general contractor retained the services of Rent–A–Crane because it had specialized skill in the operation of cranes. There is no evidence that Chesapeake gave instructions on how to drive cranes or operate any of their controls. It fully relied on the knowledge, training, and experience of Rent–A–Crane's employees. We hold Chesapeake's general supervision over the work site and its instructions regarding the movement and location of the cranes on its premises is not sufficiently related to the use and operation of the equipment and did not give rise to a duty.[5]

¶ 16 Appellants distinguish *Hatley*. They contend *Hatley* involved a plaintiff who was injured in a fall while climbing a telephone pole that had rotted, a condition unknown to the defendant. Appellants argue the instant case was the result of conditions *created* by Chesapeake. Gobble submitted an affidavit implying the accident happened because Chesapeake imposed an unreasonable time schedule, required that the crane be set up in a space that was too small, and did not provide adequate lighting.[6]

5. This conclusion is consistent with other Oklahoma cases. In *Hatley v. Mobil Pipe Line Company*, 1973 OK 42, ¶ 26, 512 P.2d 182, 190, a supervisor's instructions and assistance did not constitute sufficient interference or direction to create a duty when the plaintiff was injured after falling from a rotted telephone pole. In *Marshall v. Hale–Halsell Co.*, 1997 OK 3, ¶ 3, 932 P.2d 1117, 1118, the plaintiff ran over his own foot while operating a motorized pallet lift and the owner did not interfere or direct plaintiff by supplying the equipment at plaintiff's request.

In *Young v. Bob Howard Auto., Inc.*, 2002 OK CIV APP 80, ¶ 14, 52 P.3d 1045, 1050, a car dealer did not interfere or direct the work of a security guard by selecting the contractor's option of providing unarmed security instead of armed security.

6. Gobble's affidavit states, "We had been working more than twelve hours that day. Chesapeake had asked us to work weekends too. We were tired, but we didn't believe we could leave the jib in that condition and we thought we could

¶ 17 Generally, the owner of the premises has a duty to warn its invitees of dangerous conditions it knows about, should know about, or has *created*. *See Rogers v. Hennessee*, 1979 OK 138, ¶ 8, 602 P.2d 1033, 1035. The dangerous condition in this case was not a hidden defect inherent upon Chesapeake's premises which it created and then failed to give a warning. In fact, Appellants admit, "this is not a failure to warn case." The alleged danger was associated with the components and controls of the crane itself, which was being operated solely by Appellants at the time of the accident. Appellants also admit, "it is true that the instrumentality of the injury was the jib on the crane which fell ..." Furthermore, as outlined above, one who engages an independent contractor is not obligated to protect the contractors' employees from hazards which are incidental to or part of the very work the contractor has been hired to perform. Appellants' argument that there is a factual controversy over the proximate cause of the accident is immaterial because we have concluded as a matter of law that Chesapeake owed no legal duty. Without a legal duty, there can be no liability for negligence as a matter of law. *Lowery*, 2007 OK 38, ¶ 12, 160 P.3d 959, 964. Our conclusion that Chesapeake did not owe a *duty* to plaintiffs with regard to the use and operation of the crane is unchanged by evidence of factors that might have indirectly contributed to the *cause* of the accident such as the schedule for completing the project, the amount of space surrounding the crane, and the adequacy of lighting in the area.

## II

¶ 18 As a separate proposition of error, Appellants argue Chesapeake *assumed* duties to protect the safety of Parsons and Gobble. They concede there are no Oklahoma cases supporting their theory and they cite none. They rely on *Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584 (10th Cir.1987), which applied Wyoming law and, in dicta, quoted another case suggesting that an owner of a work site can assume affirmative duties with respect to safety even if the employee is injured doing the very work the contractor was hired to perform. *Hull*, 812 F.2d at 589. Appellants have failed to identify any specific evidence where Chesapeake assumed a duty of safety. The references to the record point to broad and unsupported statements such as, "Chesapeake had specific employees assigned to supervise construction and safety issues during the construction project." We choose not to expand the clear duties recognized by Oklahoma courts where there is no reason to do so.

## III

¶ 19 When it granted Chesapeake's motion for summary judgment, the trial court also granted Chesapeake's motion to strike Appellant's proffered affidavit of Robert Coulombe. Appellants propose this order was erroneous because the trial court incorrectly concluded the affidavit did not concern issues raised by the parties in connection with the motion for summary judgment.[7]

¶ 20 In his affidavit, Robert Coulombe stated his experience and competence to

get it stowed. People including Chesapeake employees had walked through the construction fencing during this job and the jib couldn't be left to where it could possibly swing back and forth on that pin. We were under time constraints and pressure to have the crane set up where it was supposed to be. There was no one from Silvercliffe, Anderson or Chesapeake left at the job site. They had all gone home as far as I know. We were in a parking lot that they planned to use the next morning. If there had been better lighting, we would not have been under the time pressure and we would have had more time to work on a better solution. There wasn't enough space in the parking lot or the site plan to do anything differently to address our problem. From my experience, there is usually enough space provided for doing everything you

might have to do with the crane. If the site planning provided enough space or even another area to tear down the crane or if the lighting had been good enough then we would have either fixed the problem or realized that it could not have been fixed. If there had been enough space and [we] were not under the time restrictions and pressure to move the crane, we would have been able to bring in larger equipment to remove the jib from the crane ... with a lowboy trailer. There wasn't enough space to do this."

7. Appellants also argue the affidavit was timely presented because there was no scheduling order in effect and the affidavit was presented soon after depositions were completed. The transcript reveals the court *overruled* the motion to strike insofar as it was based on untimeliness.

qualify him as an expert witness in crane lifting operations. The Coulombe affidavit does not present facts requiring the conclusion that Chesapeake owed a legal duty to Parsons and Gobble. The opposite is true. Coulombe noted the admission of Chesapeake that it "relied on the crane operator to address all the safety issues concerning the crane." He describes Chesapeake's involvement as "imposing time and space restrictions or engaging in ordinary construction scheduling activities." Coulombe's affidavit states Chesapeake "controlled the construction process involving the scheduling, location, movement times and *how the work was to be done.*" However, the affidavit does not identify any actions taken by Chesapeake which would constitute interference or direction with respect to how to drive a crane or operate any of its controls. The affidavit does not change our legal conclusion that Chesapeake owed no duty to Appellants. Any error attributed to striking the affidavit was harmless.

### IV

¶ 21 Appellants filed a motion for reconsideration and argued Chesapeake failed in its obligation "to demonstrate conclusively, via undisputed facts over which reasonable individuals do not disagree, that they ... exercised no control over the project, site, or workers at issue in this case." Appellants contend that Chesapeake's interference and control of their work creates a factual issue for the jury to determine. As we have stated, the existence of a duty is a question of law and the court correctly determined Chesapeake had no duty.

¶ 22 The trial court's summary judgment, and order denying reconsideration, in favor of Chesapeake is AFFIRMED.

HETHERINGTON, P.J., and MITCHELL, J., concur.